IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| Semaj Randolph and Lashonda Randolph, both individually and as the natural mother of Semaj Randolph, | Civil Action No.: 5:12-cv-3087-JMC |
| Plaintiff(s), | |
| vs. | |
| Harold Thad Turner, Keith Scharf, Orangeburg Department of Public Safety, Wendell Davis, both individually and in his official capacty as the Chief of the Orangeburg Department of Public Safety (aka Director of Public Safety for the City of Orangeburg) and The City of Orangeburg, | 1st AMENDED COMPLAINT |
| Defendant(s). | |

The Plaintiffs, by and through their undersigned counsel, for a Complaint against the Defendants, do hereby respectfully allege as follows:

**PREFACE**

The Plaintiffs Semaj Randolph (hereinafter "Semaj") and Lashonda Randolph (hereinafter "Lashonda") bring this lawsuit stemming from a violation of the Plaintiff Semaj's rights under federal and state law.  Plaintiffs allege that one or more officers from the Orangeburg Department of Public Safety used excessive force upon the Plaintiff Semaj during the service of a warrant and executed their duties in a grossly negligent manner which proximately caused the personal injuries of Plaintiff Semaj and economic losses for Semaj Randolph's mother, Lashonda Randolph, for Semaj's extensive medical bills.  After knocking and announcing their presence

the Plaintiff opened the door whereupon the Defendants threw a diversionary device, aka a "flash-bang grenade" at Plaintiff Semaj Randolph. This explosive diversionary device was thrown in the direction of Semaj's face when it exploded causing massive and severe injuries to his face, including severe burns over his entire face, fractured facial bones and torn flesh. Defendants' acts and omissions resulted in hundreds of thousands of dollars of medical bills for Plaintiff Semaj's mother, Plaintiff Lashonda Randolph. The Defendants individually named are liable under Federal law and these Defendants' employers and supervisors are liable for the actions of said Defendants under both Federal and State Law.

## PARTIES

**Plaintiffs**

1. The Plaintiff, Semaj Randolph (hereinafter "Semaj") is a citizen and resident of the City and County of Orangeburg, State of South Carolina.

2. The Plaintiff, Lashonda Randolph (hereinafter "Lashonda") is a citizen and resident of the City and County of Orangeburg, State of South Carolina and is the natural mother of Plaintiff Semaj.

**Defendants**

3. The Defendants Harold Thad Turner (hereinafter "Turner"), Keith Scharf (hereinafter "Scharf") and Wendell Davis (hereinafter "Davis") were at all relevant times acting under color of state law and in the course and scope of their duties as employees, agents, officers and/or chief/director for the Orangeburg Department of Public Safety. All are believed to be citizens and residents of the County of Orangeburg, or at least were at the time of the alleged

incident. They are sued in their individual capacities for compensatory and punitive damages under Federal law.

4. The Defendant, Davis, at all relevant times, was the Chief/Director of the Orangeburg Department of Public Safety, aka as the Director of Public Safety for the City of Orangeburg. Chief Davis had responsibility for the management and operation of the Orangeburg Department of Public Safety as well as being responsible for the actions of all officers of the Orangeburg Department of Public Safety. He is sued in his representative capacity for the office Chief of the Orangeburg Department of Public Safety pursuant to the South Carolina Tort Claims Act which makes the employing entity liable for the torts of its employees (*S.C.Code* §15-78-70). Plaintiff alleges the Orangeburg Department of Public Safety and the City of Orangeburg are liable for the acts and omissions of Davis, Scharf and Turner for the excessive force, negligence, gross negligence, recklessness and other liability forming conduct used against the Plaintiff Semaj.

5. All officers/Defendants were acting within the course and scope of their official duties as employees of the Orangeburg Department of Public Safety in relation to this claim.

6. The Defendants Turner, Scharf and Davis, were at all relevant times acting under color of state law and in the course and scope of their duties as officers for the Orangeburg Department of Public Safety and/or the City of Orangeburg. They are sued in their individual capacities for compensatory and punitive damages under Federal law.

7. The Defendants Orangeburg Department of Public Safety (hereinafter "ODPS") and the City of Orangeburg (hereinafter "City") are political subdivisions of the State of South Carolina and/or some other type of entity that are responsible for the actions of its agents and

employees and that Scharf, Turner and Davis were agents and/or employees of ODPS and/or City and at all times mentioned herein were acting within the scope and course of their employment.

8.      Upon information and belief, ODPS, the City and Chief Davis had the right and/or power to direct and control the manner in which its employees and/or agents executed their duties.

9.      The grossly negligent acts, omissions and liability of all Defendants includes their agents, principals, employees and/or servants, both directly and vicariously, pursuant to principals of non-delegable duty, corporate liability, apparent authority, agency, ostensible agency and/or respondeat superior and the acts and/or omissions of the above-named Defendants were the direct and proximate cause of the injuries, damages and losses of the Plaintiffs Semaj and Lashonda.

10.     All Defendants (public entities and individuals) are sued under Federal law and Federal Causes of action. Orangeburg Department of Public Safety (ODPS), Chief Davis in his represeative/official capacity as Chief of Orangeburg Department of Public Safety and the City of Orangeburg are sued under State law causes of action (South Carolina Tort Claims Act) and punitive damages are not sought in these State law actions.

## JURISDICTION

11.     Jurisdiction is founded upon South Carolina common law against ODPS, City and Chief Davis, in his representative capacity as the Chief of ODPS, pursuant the South Carolina Tort Claims Act *S.C. Code Ann.* § 15-78-10, *et seq.*.  The events which give rise to this litigation occurred in Orangeburg County, South Carolina.  Plaintiffs further invoke this Court's

concurrent jurisdiction to hear claims arising under the Fourth and Fourteenth Amendments of the United States Constitution and brought pursuant to 42 U.S.C. §§ 1983 and 1988 against the individually named Defendants.

## JOINT AND SEVERAL LIABILITY

12. The above-named Defendants are jointly and severally liable for all damages alleged herein since their negligent, grossly negligent, reckless and wanton acts and omissions, singularly or in combination, are the direct and proximate cause of Plaintiffs' damage, injuries and losses.

## GENERAL FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

13. On October 7, 2010, officers of ODPS began the process of obtaining a search warrant to search the private residence at 637 Rowe Street in the City of Orangeburg, South Carolina.

14. As part of the search warrant service, Defendant Turner, who was a Captain in the Orangeburg Department of Public Safety and head of the Special Response Team (aka "SRT) developed a written "Tactical Action Plan".

15. The "SRT" is a 'military style' unit that makes forced entries using a number of "military style" devices including explosive diversionary devices (aka flash-bang grenades), body armor, shields, pike poles/Halligan tools, and battering rams.

16. A flash-bang grenade is a type of explosive device which is designed to create a very disorienting very bright flash and very loud bang.

17. It is classified among the grenade family of explosives since it is designed to be activated and then thrown or launched before it explodes.

18.     When a flash-bang is detonated, it produces an extremely bright flash of light which temporarily over-stimulates the retina. As a result, people cannot see for around five to 10 seconds.

19.     The loud blast causes temporary loss of hearing and also disturbs the fluid in the ear, causing loss of balance.

20.     The filler of a flash-bang grenade consists of a pyrotechnic metal-oxidant mix of magnesium or aluminum and an oxidizer such as ammonium perchlorate or potassium perchlorate.

21.     The explosive mix of a flash-bang grenade burns at a temperature of between 3,800 and 4,200 degrees.

22.     Pike poles and/or Halligan tools are "forcible entry tools" often used by firefighters to break down doors.

23.     The Tactical Action Plan created by Captain Turner was an outline of the actions to be taken by the SRT unit. It dictated that he (Captain Turner) and Defendant Scharf "will knock and announce" and then deploy diversion devices (flash-bang grenades).

24.     Unless law enforcement can show a judge special circumstances, a search warrant requires that law enforcement "knock and announce" before entering a residence or other dwelling where citizens have an expectation of privacy.

25.     These special circumstances did not exist nor were they requested, therefore the warrant in this search required the officers to knock and announce and wait a reasonable time before entering the premises.

6

26.     Consistent with the type of warrant obtained, Defendant Turner planned that the SRT unit would knock and announce their presence.

27.     Our United States Supreme Court has ruled that "[T]he common-law principle that law enforcement officers must announce their presence and provide residents an opportunity to open the door is an ancient one. (*Hudson v. Michigan*, 547 U.S. 586, 126 S.Ct. 2159, 2006)

28.     The United States Supreme Court has held in numerous cases that law enforcement must "knock and announce" and wait a "reasonable time" before forcing entry.

29.     In the Supreme Court case of *Hudson v. Michigan*, Justice Scalia cited the common sense rationale for the "knock and announce rule" (i.e., waiting a 'reasonable amount of time' before making a forced entry) identifying a number of public interests:

    a)     "One of those interests is the protection of human life and limb, because an unannounced entry may provoke violence in supposed self-defense by the surprised resident." See, *e.g., McDonald v. United States,* 335 U.S. 451, 460–461, 69 S.Ct. 191, 93 L.Ed. 153 (1948);

    b)     Another interest is the protection of property. Breaking a house (as the old cases typically put it) absent an announcement would penalize someone who " 'did not know of the process, of which, if he had notice, it is to be presumed that he would obey it ... .' " *Wilson*, 514 U.S., at 931–932, 115 S.Ct. 1914 (quoting *Semayne's Case,* 5 Co. Rep. 91a, 91b, 77 Eng. Rep. 194, 195–196 (K.B.1603)). The knock-and-announce rule gives individuals "the opportunity to comply with the law and to avoid the

7

        destruction of property occasioned by a forcible entry." *Richards*, 520 U.S., at 393, n 5, 117 S. Ct. 1416.

   c)   And thirdly, the knock-and-announce rule protects those elements of privacy and dignity that can be destroyed by a sudden entrance. It gives residents the "opportunity to prepare themselves for" the entry of the police. *Richards*, 520 U.S., at 393, n 5, 117 S. Ct. 1416. "The brief interlude between announcement and entry with a warrant may be the opportunity that an individual has to pull on clothes or get out of bed." *Ibid*. In other words, it assures the opportunity to collect oneself before answering the door.

30. After Defendants Scharf and Turner arrived at the residence, they both approached the front door to the residence and "knocked and announced" their presence.

31. Simultaneously to announcing their presence, or immediately thereafter, Defendants Scharf and Turner breached the door and deployed a flash-bang grenade into the residence.

32. Due to the rapid succession of the 'knocking and announcing' and deploying the flash-bang grenade, no one inside the residence, including Plaintiff Semaj, had any opportunity to comply with the Defendants' announcement of their presence and/or request to open the door.

33. Defendants Scharf and Turner breached the door and threw a flash-bang grenade into the residence having no idea of the layout of the home and were deliberately indifferent to the safety of the occupants of the residence when this lethal force was employed or in the

alternative, these Defendants used lethal force upon Plaintiff Semaj when he was not posing a threat of death or severe bodily injure to anyone.

34.     It is improper, and nonsensical, to knock on the door of a residence, literally announcing your presence and inviting a resident to come to the door and comply with a police request/command, then throw an explosive "diversionary device" to "distract" the same person.

35.     Defendants Scharf and Turner used this "diversionary" device as a weapon against Plaintiff Semaj and had no justification to use this amount and/or type of force against Plaintiff Semaj when he did not pose a threat and was complying with the officers' commands.

36.     The use of force by these Defendants against Plaintiff Semaj was excessive and objectively unreasonable.

37.     This improper use of a "diversionary" device after knocking and announcing was planned in writing in advance by the leader of the SRT unit, Defendant Captain Turner.

38.     The improper use of this explosive diversionary device was carried out according to the written plan of the SRT unit.

39.     The improper use of this explosive diversionary device was known, or should have been known, to the Defendants Chief of ODPS (Davis), the ODPS, Captain Turner and the City of Orangeburg.

40.     As such Defendant Davis and Captain Turner condoned and/or ordered this improper practice or in the alternative both were deliberately indifferent to the practice of using unreasonable force by the SRT unit members when they would knock and announce and then use an explosive distraction device.

41. By the very same logic, the Defendant City and the Defendant ODPS condoned and/or were deliberately indifferent to this unreasonable use of force by the SRT unit members.

42. The acts and omissions of all Defendants as set forth herein were at all material times pursuant to the actual customs, policies, practices and procedures of the ODPS and the City of Orangeburg.

43. At all material times, each Defendant acted under color of the laws, statutes, ordinances, and regulations of the State of South Carolina.

44. Defendants' conduct herein, including but not limited to their decision(s) to use excessive and unnecessary force to execute the search warrant, their ill-planned and unjustifiable use of the flash-bang grenade and the reckless and improper manner in which they deployed the flash-bang was contrary to generally accepted, reasonable law enforcement procedures and tactics and caused the damages to the Plaintiffs as laid out in this Complaint.

45. That acts and/or omissions, cited above, by the various Defendants, were the direct and proximate cause of the injuries, damages and losses of the Plaintiff Semaj, including, but not limited to broken facial bones, severe burns to the face, torn flesh, pain and suffering, future pain and suffering, future medical bills, lost and/or diminished earnings capacity, fear and anxiety as well as past medical bills for Plaintiff Lashonda.

46. The acts and/or omissions of the Defendants violated the following clearly established and well settled Federal and State Constitutional rights of Plaintiff Semaj Randolph by using excessive force.

**FOR A FIRST CAUSE OF ACTION**
**(42 U.S.C. § 1983 Improper Search, Excessive Force & Due Process)**
**(As to All Defendants)**

47. The Plaintiffs incorporate by reference all previous allegations of fact and law in the paragraphs above as if repeated herein.

48. By the actions and omissions described above, Defendants violated 42 USC §1983, depriving Plaintiff Semaj of the following clearly-established and well-settled constitutional rights protected by the Fourth and Fourteenth Amendments to U.S. Constitution:

    a. The right to be free from unreasonable searches and seizures as secured by the Fourth and Fourteenth Amendments;

    b. The right to be free from excessive and unreasonable force in the course of search or seizure as secured by the Fourth and Fourteenth Amendments;

    c. The right to be free from the use of unlawful deadly force as secured by the Fourth and Fourteenth Amendments;

    d. The right to be free of unlawful, reckless, deliberately indifferent, and conscience shocking deadly and/or excessive force as secured by the Fourteenth Amendment;

    e. The right to be free from deprivation of liberty and injury without substantive due process and from state created danger as secured by the Fourteenth Amendment;

    f. And in such other particulars as may be learned through discovery.

49. As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiffs sustained injuries and damages as otherwise set forth in this Complaint.

50. The conduct of Defendants in their individual capacities, entitles Plaintiffs to punitive damages and penalties allowable under 42 USC §1983 and S.C. Code.

51. Plaintiffs are also entitled to reasonable costs and attorney fees under 42 USC §1988 and applicable South Carolina codes and laws.

52. Plaintiff is unable at this point to determine between Defendant Scharf and Turner who actually used (threw) the flash-bang grenade at/on Semaj Randolph, however, Plaintiff

alleges both are liable under the "by-stander liability theory" and the "integral participant theory".

53.    As to "by-stander liability theory", based on the allegations above, namely that Scharf and Turner were together at the front door of the residence when they knocked and announced, breached the door together, one of these Defendants then utilized the flash-bang grenade against Semaj Randolph and both Scharf and Turner knew the flash-bang was going to be utilized because they were both briefed on its planned use, and;

   (1)    both Scharf and/or Turner knew that a fellow officer was violating Semaj Randolph's constitutional rights;

   (2)    both Scharf and/or Turner had a reasonable opportunity to prevent the harm; and

   (3)    both Scharf and/or Turner chose not to act;

Therefore, either Scharf or Turner is liable for the actions of the other under the by-stander liability theory.

54.    As to "integral participant liability theory", Scharf and Turner were working together to effectuate the search.

55.    They both were together when they knocked and announced, they were together when they breached the doorway and they were together when the flash-bang grenade was utilized.

56.    Both Scharf and Tuner performed police functions that were integral to the search, therefore one is liable for the other's excessive use of force as an integral participant to the search.

## FOR A SECOND CAUSE OF ACTION
### (42 U.S.C. § 1983 Deliberate Indifference)
### (As to Defendants Davis, Turner, ODPS & City of Orangeburg)

57.  The Plaintiff incorporates by reference all previous allegations of fact and law in the paragraphs above as if repeated herein.

58.  The unconstitutional actions and/or omissions of Defendants Chief Wendell Davis, Captain Turner ODPS and the City of Orangeburg as well as other officers employed by or acting on behalf of these Defendants, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of the ODPS, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policy making officers for ODPS and the City of Orangeburg:

   a.  To use or tolerate the use of excessive and/or unjustified force, in particular during the search of residential dwellings;

   b.  To misuse or tolerate the improper and dangerous misuse of flash-bang grenades;

   c.  To create unnecessary danger and risk of serious harm or death, with deliberate indifference, to occupants of residences being searched by law enforcement officers;

   d.  To cover-up violations of constitutional rights by failing to properly investigate and/or evaluate officer involved shootings and by ignoring and/or failing to properly and adequately investigate and discipline unconstitutional or unlawful police activity,

   e.  To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers and police department personnel, whereby an officer or member of the department does not provide adverse information against a fellow officer or member of the department; and,

   f.  To use or tolerate inadequate, deficient, and improper procedures for handling, investigating, and reviewing complaints of officer misconduct, and;

   g.  And as may otherwise be learned during discovery in this case.

59. Defendants Chief Davis, Turner, ODPS and the City of Orangeburg failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline officers of the ODPS with deliberate indifference to Plaintiffs' constitutional rights, which were thereby violated as described above.

60. The unconstitutional actions and/or omissions of Defendants and other ODPS officers, as described above, were approved, tolerated and/or ratified by policymaking officers for the ODPS. Plaintiffs are informed and believe, and thereupon allege, that Defendant Chief Davis and Captain Turner were informed about the SRT raid before it occurred and that the details of this incident have since been revealed to the authorized policy makers within the City of Orangeburg and the ODPS, and that such policy makers have direct knowledge of the fact that throwing a flash-bang stun grenade at Semaj Randolph was not justified under the circumstances, but rather represented an unconstitutional display of unreasonable, excessive and deadly force. Notwithstanding this knowledge, the authorized policy makers within ODPS and the City of Orangeburg have labeled Semaj Randolph's injuries as "accidental," have approved of Defendants' tactical operation, and have made a deliberate choice to endorse the SRT unit members' excessive use of force. By so doing, the authorized policy makers within ODPS and the City of Orangeburg have shown affirmative agreement with the individual defendant officers' actions, and have ratified the unconstitutional acts of the individual defendant officers.

61. The aforementioned customs, policies, practices, and procedures, the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline, as well as the unconstitutional orders, approvals, ratification and toleration of wrongful conduct by Defendants Chief Wendell Davis, Captain Turner, ODPS and the City of

14

Orangeburg, were a moving force and/or a proximate cause of the deprivations of Plaintiffs' clearly-established and well-settled constitutional rights in violation of 42 USC §1983, as more fully set forth above.

62. Defendants subjected Plaintiff Semaj Randolph to their wrongful conduct, depriving Plaintiff of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Semaj Randolph and others would be violated by their acts and/or omissions.

63. As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices and procedures of Defendants, Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs and attorney fees as set forth, above, including punitive damages against Defendants.

**FOR A THIRD CAUSE OF ACTION**
**(Negligence & Gross Negligence)**
**(As to Defendants Davis in his official capacity, ODPS & City of Orangeburg)**

64. The Plaintiff incorporates by reference all previous allegations of fact and law in the paragraphs above as if repeated herein.

65. The Defendants all departed from the duties of care required by law enforcement officers and the agencies that hire, train and employ these officers and were thereby negligent, careless, grossly negligent, reckless and acted in violation of the duties owed to Plaintiff in that they committed one or more of the following acts of omission or commission, any or all of which were departures from the prevailing duties of care:

    a.    in failing to ensure the safety of the Decedent;

    b.    in failing to appreciate the conditions that existed on the night in question when using force such as throwing a flash-bang grenade and otherwise discharging deadly weapons without just cause;

    c.    in failing to adhere to proper law enforcement procedures when serving warrants;

    d.    in failing to use alternative less violent and/or lethal methods of executing a warrant;

    e.    in failing to have in place proper and adequate policies, procedures and protocols for law enforcement officers serving warrants or, if such policies, procedures and protocols were in place, in failing to use due care to enforce them;

    f.    in failing to properly have in place and adequate policies, procedures and protocols for the use of flash-bang grenades and/or deadly force or, if such policies, procedures and protocols were in place, in failing to use due care to enforce them;

    g.    in failing to properly train and educate their employees or, if properly trained and educated, in failing to allow their employees to exercise independent judgment and care;

    h.    in such other particulars as may be ascertained through discovery procedures undertaken pursuant to South Carolina Rules of Civil Procedure.

66.    As a direct and proximate result of the negligence, carelessness, gross negligence, recklessness and departure from the duties of care owed by Defendants, Semaj Randolph was severely injured and has suffered severe and extreme emotional distress, anxiety, grief and sorrow and Plaintiff Lashonda Randolph incurred medical bills for her son Semaj Randolph, for which the Plaintiffs are entitled to recover in an amount to be determined by a jury at the trial of this action.

WHEREFORE, Plaintiffs, respectfully pray for judgment against Defendants for all actual damages, consequential damages and punitive damages in an amount to be determined by a jury at the trial of this action as well as attorney's fees and costs pursuant to 42 U.S.C. § 1983 and 1988 and for such other and further relief as this Court deems just and proper.

                                **MCGOWAN, HOOD, & FELDER, LLC**

                                /s/ Robert V. Phillips\
                                Robert V. Phillips, Esq.\
                                1539 Health Care Drive\
                                Rock Hill, South Carolina 29732\
                                (803) 327-7800 - Office\
                                (803) 328-5656 - Facsimile\
                                rphillips@mcgowanhood.com

Rock Hill, South Carolina\
May 8, 2013